**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| WAUKEGAN POTAWATOMI CASINO, LLC, an Illinois limited liability company, | ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | Case No. 1:20-cv-750 |
| v. | ) ) | |
| | ) | Judge John F. Kness |
| CITY OF WAUKEGAN, an Illinois municipal corporation, | ) ) | |
| | ) | |
| Defendant. | ) | |


**MEMORANDUM IN SUPPORT OF DEFENDANT CITY OF WAUKEGAN'S**
**MOTION FOR SUMMARY JUDGMENT**


HeplerBroom LLC
Glenn E. Davis
Charles N. Insler
211 North Broadway, Suite 2700
St. Louis, MO 63102
T: (314) 241-6160
F: (314) 241-6116
glenn.davis@heplerbroom.com
charles.insler@heplerbroom.com

*Counsel for City of Waukegan*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................iii

I.    INTRODUCTION ................................................................................1

II.   PROCEDURAL HISTORY...................................................................2

III.  STATEMENT OF MATERIAL AND UNDISPUTED FACTS..............................3

      A.   The City of Waukegan Issues a Request for Proposal After
           Passage of SB 690........................................................................3

      B.   The City of Waukegan Receives Casino Proposals From Five Applicants...4

      C.   The City of Waukegan Public Hears from the Applicants ...........................4

      D.   The Applicants Present Different Visions for a Casino in Waukegan..........4

      E.   The City of Waukegan Certifies Three Casino Applicants, but not
           Potawatomi ................................................................................6

      F.   The Potawatomi Tribe Seeks to Have the City of Waukegan
           Reconsider Its Decision ................................................................7

      G.   The City Council (Again) Votes Against Certifying WPC .........................8

IV.   LEGAL ARGUMENT........................................................................8

      A.   Summary Judgment Presents the Proverbial "Put Up or Shut Up"
           Moment......................................................................................8

      B.   The City of Waukegan Enjoys Absolute Immunity from this Lawsuit ........9

      C.   The Summary Judgment is Appropriate on the WPC's Equal Protection
           Claim Because WPC Cannot Bring Suit Under §1983 as an Arm of the
           Potawatomi Tribe.......................................................................12

           1.   A Tribal Casino Formed Waukegan Potawatomi Casino.................14

           2.   Waukegan Potawatomi Casino Serves Tribal Goals ........................15

           3.   The Potawatomi Tribe Controls the Decisions of Waukegan
                Potawatomi Casino ..........................................................16

i

4.      The Potawatomi Tribe Has Used Sovereign Immunity to Its Advantage ........................................................................................17

5.      Waukegan Potawatomi Casino is Financially Intertwined with the Potawatomi Tribe..............................................................................17

6.      Tribal Sovereign Immunity Is Served by Dismissing a §1983 Claim..........................................................................................18

D.      Summary Judgment is Appropriate on Waukegan Potawatomi Casino's Equal Protection Claim Because Waukegan Potawatomi Casino Cannot Prove It Was Similarly Situated or that the City of Waukegan Acted Irrationally.............................................................................................19

1.      The Casino Applicants Were Not Similarly Situated As a Matter of Law and Fact ....................................................................19

2.      The City of Waukegan Acted Rationally...........................................21

E.      Summary Judgment is Appropriate on Waukegan Potawatomi Casino's Gambling Act Claim Because Waukegan Potawatomi Casino Cannot Establish Its Ability to Invoke the Statute .......................................................23

1.      There is No Private Right of Action Under the Gambling Act..........24

2.      Waukegan Potawatomi Casino Has Not Exhausted Its Administrative Remedies....................................................................26

F.      Summary Judgment is Appropriate on Waukegan Potawatomi Casino's Open Meetings Act Claim Because the City Council Complied with the Appropriate Municipal Law..........................................................................28

1.      The October 17, 2019 Vote to Certify Certain Casino Applicants Complied with the Open Meetings Act .............................................29

2.      The October 21, 2019 Vote on the Motion to Reconsider Complied with the Open Meetings Act ............................................................31

3.      Waukegan Potawatomi Casino's Proposed Remedy is Too Extreme, Even Assuming a Violation of the Open Meetings Act....................33

G.      Summary Judgment is Appropriate on Waukegan Potawatomi Casino's Claim for Punitive Damages........................................................................34

V.      CONCLUSION.......................................................................................34

# TABLE OF AUTHORITIES

*145 Fisk, LLC v. Nicklas,*
    986 F.3d 759 (7th Cir. 2021) ...................................................................19, 21, 22

*Alarm Detection Sys., Inc. v. Orland Fire Prot. Dist.,*
    194 F. Supp. 3d 706 (N.D. Ill. 2016) ......................................................................24

*Alarm Detection Sys., Inc. v. Orland Fire Prot. Dist.,*
    929 F.3d 865 (7th Cir. 2019) ................................................................................26

*Bd. of Educ. of Waukegan Cmty. Unit Sch. Dist. 60 v. Illinois State Charter Sch. Comm'n,*
    2018 IL App (1st) 162084..........................................................................................33

*Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort,*
    629 F.3d 1173 (10th Cir. 2010) ...........................................................14, 15, 16, 18

*Cadet v. Snoqualmie Casino,*
    469 F. Supp. 3d 1011 (W.D. Wash. 2020)......................................................15, 16

*Caesars Massachusetts Mgmt. Co., LLC v. Crosby,*
    778 F.3d 327 (1st Cir. 2015)............................................................................ 19-20

*Castaneda v. Illinois Hum. Rts. Comm'n,*
    547 N.E.2d 437 (Ill. 1989)..............................................................................26, 27

*CEnergy–Glenmore Wind Farm # 1, LLC v. Town of Glenmore,*
    769 F.3d 485 (7th Cir.2014) ...................................................................................34

*Chemehuevi Indian Tribe v. McMahon,*
    934 F.3d 1076 (9th Cir. 2019) ...............................................................................13

*Chicago Sch. Reform Bd. of Trustees v. Martin,*
    309 Ill. App. 3d 924 (1st Dist. 1999) ....................................................................33

*City of Inglewood v. Teixeira,*
    2015 WL 5025839 (C.D. Cal. Aug. 20, 2015)......................................................30

*Confederated Tribes of Warms Springs Rsrv. of Oregon v. Vanport Int'l, Inc.,*
    428 F. Supp. 3d 384 (D. Or. 2019) ................................................................. 12-13

*Dolly's Cafe LLC v. Illinois Gaming Bd.,*
    2019 WL 6683046 (N.D. Ill. Dec. 6, 2019)..............................................21, 22, 23

*Dotson v. Tunica Biloxi Gaming Comm'n,*
    2020 WL 1493028 (W.D. La. Feb. 27, 2020)........................................................12

*Emerald Casino, Inc. v. Illinois Gaming Bd.*,
852 N.E.2d 512 (Ill. App. Ct. 2006) ....................................................................26

*Fares Pawn, LLC v. Indiana Dep't of Fin. Institutions*,
755 F.3d 839 (7th Cir. 2014) ..............................................................19, 21, 22

*FKFJ, Inc. v. Vill. of Worth*,
466 F. Supp. 3d 853 (N.D. Ill. 2020) ...................................................................22

*Gonzalez v. O'Connell*,
355 F.3d 1010 (7th Cir. 2004) ....................................................................... 27-28

*Grant v. Trustees of Indiana Univ.*,
870 F.3d 562 (7th Cir. 2017) ..............................................................................9

*Holtz v. Oneida Airport Hotel Corp.*,
826 F. App'x 573 (7th Cir. 2020) .......................................................................13

*Howard v. Plain Green, LLC*,
2017 WL 3669565 (E.D. Va. Aug. 7, 2017).................................................... 17-18

*Inyo Cty., Cal. v. Paiute-Shoshone Indians of the Bishop Cmty. of the Bishop Colony*,
538 U.S. 701 (2003).......................................................................................12

*Ireson v. AVI Casino Enterprises, Inc.*,
2017 WL 2960526 (D. Nev. July 10, 2017) .........................................................14

*Josendis v. Wall to Wall Residence Repairs, Inc.*,
662 F.3d 1292 (11th Cir. 2011) ..........................................................................2

*McCoy v. Salish Kootenai Coll., Inc.*,
334 F. Supp. 3d 1116 (D. Mont. 2018).................................................................18

*Michigan v. Bay Mills Indian Cmty.*,
572 U.S. 782 (2014)..........................................................................................13

*Miller v. Phelan*,
845 F. Supp. 1201 (N.D. Ill. 1993) .....................................................................32

*Monticello Sch. Dist. No. 25 v. George L. on Behalf of Brock L.*,
102 F.3d 895 (7th Cir. 1996) .............................................................................30

*Nguyen v. Cache Creek Casino Resort*,
2021 WL 22434 (E.D. Cal. Jan. 4, 2021) .............................................................14

iv

*Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Oklahoma*,
498 U.S. 505 (1991)...............................................................................12

*O'Malley v. Vill. of Palos Park*,
805 N.E.2d 308 (Ill. App. Ct. 2004) .......................................................9

*Patel v. Zillow, Inc.*,
2017 WL 3620812 (N.D. Ill. Aug. 23, 2017) .................................24, 26

*Patterson v. Mclean Cty. Sheriff's Dep't*,
2021 WL 2403436 (C.D. Ill. June 11, 2021) ...........................................34

*Peeples v. Vill. of Johnsburg*,
932 N.E.2d 612 (Ill. App. Ct. 2010) ......................................................27

*Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*,
1986 WL 2027 (N.D. Ill. Feb. 7, 1986) ...................................................2

*Santa Clara Pueblo v. Martinez*,
436 U.S. 49 (1978).............................................................................12, 18

*Steen v. Myers*,
486 F.3d 1017 (7th Cir. 2007) ................................................................9

*Strauss v. City of Chicago*,
2021 IL App (1st) 191977...................................................................9, 10

*Sypolt v. Illinois Gaming Bd.*,
No. 19-CV-05991, 2021 WL 1209132 (N.D. Ill. Mar. 31, 2021)...........1

*Thurmond v. Forest Cty. Potawatomi Cmty.*,
2020 WL 488864 (E.D. Wis. Jan. 30, 2020)..................................... 12-13

*Village of Bloomingdale v. CDG Enterprises, Inc.*,
752 N.E.2d 1090 (Ill. 2001) ........................................................... 9-11

*Village of Willowbrook v. Olech*,
528 U.S. 562 (2000).............................................................................19

*Washington v. McDonough*,
2021 WL 1962420 (N.D. Ill. May 17, 2021) ..................................... 8-9

*White v. Univ. of California*,
765 F.3d 1010 (9th Cir. 2014) ...............................................................14

*Williams v. Big Picture Loans, LLC*,
    929 F.3d 170 (4th Cir. 2019) ...............................................................13

*Williamson v. Doyle*,
    112 Ill. App. 3d 293 (1st Dist. 1983) ...................................................33

## STATUTES AND CODES

Code of Ordinances of Waukegan, Illinois.................................................29, 32

5 ILCS 120/1 .................................................................................................31

5 ILCS 120/2.02.......................................................................................31, 32

5 ILCS 120/2.06.............................................................................................29

5 ILCS 120/3 .................................................................................................33

230 ILCS 10/5...........................................................................................25, 27

230 ILCS 10/7.........................................................................10, 24, 25, 26

745 ILCS 10/2-102 .........................................................................................34

745 ILCS 10/2-104 .........................................................................................10

## I.    **INTRODUCTION**

Decisions over casino licenses "often involve millions of dollars," which is why there is a "danger that a person who receives an adverse decision will retaliate and seek vengeance in the courts." *Sypolt v. Illinois Gaming Bd.*, No. 19-CV-05991, 2021 WL 1209132, at *4 (N.D. Ill. Mar. 31, 2021). That is exactly what has happened here. On October 17, 2019, the City Council for the City of Waukegan ("City" or "Waukegan") certified three casino license applicants to the Illinois Gaming Board. *See* Defendant's Statement of Material, Undisputed Facts ("SOF") at ¶47. The City declined, however, to certify the casino license application for Plaintiff Waukegan Potawatomi Casino, LLC ("WPC"). SOF ¶48. WPC sought to have the City reconsider its decision. SOF ¶54. But on October 21, 2019, WPC filed this lawsuit, hours before the City Council was scheduled to vote on its motion for reconsideration. SOF ¶¶57-60.

The reasons for this costly lawsuit are transparent. Discovery has shown that the Forest County Potawatomi Community (the "Potawatomi Tribe") is interested in blocking any casino other than its own. ██████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████

███████████████████████ This position dates as far back as 2001, when the Potawatomi Tribe filed suit to block the Menominee Indian Tribe's plans to build a casino in Kenosha, Wisconsin. SOF ¶86. The Potawatomi Tribe's internal communications and history of litigation reveal this scorched earth lawsuit is factually suspect.

The relevant case law reveals this lawsuit is legally unsupported. All of WPC's claims are barred by the Illinois Tort Immunity Act's grant of immunity for municipal licensing decisions. Putting that argument aside, WPC's §1983 claim fails because WPC cannot file a §1983 lawsuit as an arm of the Potawatomi Tribe. WPC's §1983 claim also fails on the merits because the casino license applicants were not similarly situated as a matter of law and fact, and because the City of Waukegan acted rationally.[1] WPC's state law claims fair no better. The Illinois Gambling Act does not provide a private right of action. WPC's Open Meetings Act claim fails because the City complied with the appropriate municipal law. And even if it did not, WPC's proposed remedy is far too extreme. Summary judgment is proper on all counts.

## II.  PROCEDURAL HISTORY

This lawsuit was originally filed in the Circuit Court of Lake County, Illinois on October 21, 2019. *See* Doc. 1. On January 3, 2020, WPC filed its First Amended Verified Complaint for Damages and Other Relief ("First Amended Complaint"). *See* Doc. 56. On January 31, 2020,

---

[1] WPC tries mightily to establish that the Mayor (who did not vote), the City's gaming consultant, and the aldermen who voted against them engaged in some vast corruption conspiracy. This disputed theory of corruption and conspiracy depends "on heaping inference on inference, like Pelion upon Ossa," which is insufficient at summary judgment. *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, No. 85-CV-01212, 1986 WL 2027, at *1 (N.D. Ill. Feb. 7, 1986); *see also Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1318 (11th Cir. 2011) (noting that evidence that consists of "one speculative inference heaped upon another" is entirely insufficient at the summary judgment stage). More to the point, these so-called facts are immaterial to the summary judgment grounds asserted.

Waukegan removed this case to federal court. Doc. 1. On February 14, 2020, Waukegan moved to dismiss Counts I and II of the First Amended Complaint. Doc. 12.

On May 14, 2021, WPC moved for leave to file a Second Amended Complaint. Doc. 85. The City of Waukegan opposed this motion, Doc. 98, and the motion is still pending before this Court. The First Amended Complaint asserts causes of action arising under the Equal Protection Clause of the Fourteenth Amendment (Count I), the Illinois Gambling Act (Count II), and the Open Meetings Act (Count III). Doc. 56. On May 17, 2021, fact discovery closed. Doc. 77. The City of Waukegan now moves for summary judgment as to all counts of WPC's First Amended Complaint.[2]

## III. STATEMENT OF MATERIAL AND UNDISPUTED FACTS

### A. The City of Waukegan Issues a Request for Proposal After Passage of SB 690

On June 28, 2019, Illinois Senate Bill 690 came into law, authorizing the Illinois Gaming Board ("IGB") to issue a casino license for the City of Waukegan. SOF ¶¶1-2. On July 3, 2019, the City of Waukegan issued a Request for Qualifications and Proposals ("RFQ/P") for those applicants seeking certification by the City to the IGB. SOF ¶4. Each applicant's RFQ/P was required to provide information on four topics: (1) property specifications and locations; (2) description of proposed development; (3) project team and experience; and (4) financial data. SOF ¶6. On July 15, 2019, the City of Waukegan extended the deadline for submitting proposals from July 22, 2019 to August 5, 2019. SOF ¶7.

---

[2] The First Amended Complaint and the proposed Second Amended Complaint assert the same three causes of action. The arguments made in this motion for summary judgment apply with equal force to either version of the complaint.

**B.    The City of Waukegan Receives Casino Proposals From Five Applicants**

On August 5, 2019, the City of Waukegan received casino proposals from five applicants in response to its RFQ/P.  SOF ¶8.  After one of the applicants withdrew its proposal, there were four remaining applicants:  (1) Lakeside Casino LLC ("North Point"); CDI-RSG Waukegan, LLC ("Rivers"); (3) Full House Resorts, Inc. ("Full House"); and (4) Plaintiff Waukegan Potawatomi Casino LLC ("WPC").  SOF ¶8.  On August 19, 2019, the City of Waukegan retained C. H. Johnson Consulting to assist its review of the casino proposals.  SOF ¶16.

**C.    The City of Waukegan Public Hears from the Applicants**

On September 18, 2019, the casino applicants gave presentations to the public.  SOF ¶17.  Each applicant was given thirty minutes for their presentation and members of the public were given three minutes for their comments.  SOF ¶17.  The September 18, 2019 meeting was not intended to produce any final action or recommendation to the Illinois Gaming Board.  SOF ¶18.  The City Council's recommendations would be made at a later meeting.  SOF ¶18.

The City of Waukegan heard from the public, both during and after the September 18, 2019 public hearing.  SOF ¶19.  Approximately 500 people attended the September 18, 2019 public hearing, during which the City heard from 44 people and reviewed 17 written comments.  SOF ¶20.  The City of Waukegan held the public comment period open for another seventeen days, during which it received another 1,249 written or emailed comments.  SOF ¶21.  The City of Waukegan received a final set of comments from 26 people during the October 7, 2019 City Council Meeting.  SOF ¶22.

**D.    The Applicants Present Different Visions for a Casino in Waukegan**

Each applicant presented its respective vision for a casino in Waukegan.  SOF ¶23.  While all of the applicants proposed to develop the Fountain Square property, each applicant proposed

different terms for the city-owned property.  SOF ¶¶24-25.  Rivers offered to purchase the Fountain Square site for $11 million or to offer a long-term lease.  SOF ¶25.  Full House offered to enter into a 99-year lease with the City of Waukegan for 2.5% of gaming revenues, subject to a minimum annual guarantee of $3 million.  SOF ¶25.  As part of its agreement, Full House proposed an option whereby it would purchase the Fountain Square site for $30 million at any time during the lease term.  SOF ¶25.  North Point offered $22 million for the Fountain Square site, with an initial payment of $10 million and another $1 million to be paid annually over twelve years.  SOF ¶25.  WPC proposed to purchase the Fountain Square property for an amount equal to plus or minus 15% of the property's appraised value of $5.6 million (a range of $4.8 million to $6.5 million).  SOF ¶¶26-28.

████████████████████████████████████████████████████████████

█████████████████████████  The proposals by Full House and North Point also featured an entertainment complex.  SOF ¶30.  ███████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████

The proposals for the actual casino itself also varied greatly.  ████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████  WPC's proposed casino, meanwhile, was of a different magnitude.  WPC proposed a casino of 110,000 to 130,000 square feet – almost double the size of the next largest proposal – with 1,890 total gaming positions.  SOF

¶39. 

### E. The City of Waukegan Certifies Three Casino Applicants, but Not Potawatomi

On October 4, 2019, WPC provided a supplemental letter to the Waukegan Casino Review Team and the City's Corporate Counsel. SOF ¶43. Among other things, the supplemental letter provided a "Revised Offer for [the] Fountain Square Parcel." SOF ¶43. WPC was now offering to purchase the Fountain Square site for the discreet figure of $12 million (instead of the previous to-be-determined offer of +/- 15% of an unspecified appraised value). SOF ¶43.

On October 17, 2019, the City Council met in a Special Session to vote on the various casino proposals. SOF ¶44. The City Council voted to certify the casino proposals of North Point, Full House, and Rivers, but voted against certifying the casino proposal by WPC. SOF ¶¶47-48. The October 17 meeting was a continuation of the public hearing that started on September 18, 2019. SOF ¶44. This meeting was an open meeting, with members of the public in attendance. SOF ¶46.

The City Council's vote was 7-2 against certifying WPC's proposal, with Aldermen Bolton, Seger, Kirkwood, Turner, Rivera, Florian and Taylor all voting against certifying WPC and Aldermen Moisio and Newsome voting in favor of certifying WPC. SOF ¶48. The alderman expressed different reasons for voting against WPC's proposal. Alderman Bolton voted not to certify WPC's proposal because she was looking for proposals that would offer more than just a casino; she wanted the proposal to offer entertainment and other amenities that would give the city

an opportunity to develop economically.  SOF ¶49.  Alderman Seger voted not to certify WPC's proposal because their [September 18] presentation had been short and fast, and their approach had been to just "hurry up and get it done."  SOF ¶50.  Alderman Kirkwood voted not to certify WPC's proposal because he did not see enough detail in their proposal and because he did not think their proposal had been transparent with respect to their offer price for the Fountain Square land.  SOF ¶51.  Alderman Turner voted not to certify WPC's proposal because he believed the Potawatomi were asking for special consideration as an Indian tribe and he found that to be a turnoff.  SOF ¶52.  Aldermen Rivera, Florian and Taylor were against any casino in Waukegan, and therefore voted against all of the casino applicants.  SOF ¶53.

**F.**    **The Potawatomi Tribe Seeks to Have the City of Waukegan Reconsider Its Decision**

On Friday, October 18, 2019, the Potawatomi Tribe delivered a letter to the City of Waukegan, requesting that the City reconsider its certification vote on Monday, October 21, 2019. SOF ¶54.  The October 18, 2019 letter bore the letterhead of the Forest County Potawatomi Community Legal Department and was signed by Jeffrey Crawford in his capacity as Attorney General of the Forest County Potawatomi Community.  SOF ¶55.

On Monday, October 21, 2019, Aldermen Florian and Rivera met with Jeffrey Crawford and Malcolm Chester to discuss the Potawatomi Tribe's request for reconsideration.  SOF ¶56. During that meeting, Crawford told Alderman Florian that if WPC was not sent to the IGB, WPC was going to file a lawsuit.  SOF ¶56.  And that is just what happened. ███████████████████ ████████████████████████████████████████████████████████████████████ ███████████████ By 3:30 p.m., the lawsuit was on file.  SOF ¶58.

### G. The City Council (Again) Votes Against Certifying WPC

On the evening of October 21, 2019, with WPC's lawsuit already on file, the City of Waukegan aldermen voted on WPC's motion for reconsideration. SOF ¶59. A majority of the City Council voted to approve the motion for reconsideration but, on reconsideration, the City Council voted against certifying WPC by a vote of 6-3. SOF ¶60. The only difference between the October 21, 2019 vote and the October 17, 2019 vote was that Alderman Florian now voted to certify WPC's proposal. SOF ¶60.

After this final vote, the Potawatomi began prosecuting its lawsuit, deposing twenty individuals with various titles and responsibilities – both inside and outside of the city government. *See* Doc. 89 at 1. These depositions – and the tens of thousands of documents that accompanied the discovery in this case – reveal that the City of Waukegan is entitled to summary judgment on all counts of WPC's First Amended Complaint.[3]

## IV. LEGAL ARGUMENT

### A. Summary Judgment Presents the Proverbial "Put Up or Shut Up" Moment

A Court "shall grant" summary judgment when the moving party shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute about a material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Washington v. McDonough*, No. 17-CV-9054, 2021 WL 1962420, at *2 (N.D. Ill. May 17, 2021). The substantive law controls whether a given fact is a material one. *Id.*

---

[3] The City of Waukegan would be entitled to summary judgment on all counts of WPC's Second Amended Complaint if WPC is ultimately granted leave to file its Second Amended Complaint. As noted above, the same arguments apply with equal force to either complaint.

Once the moving party properly presents their motion for summary judgment, the adverse party must set forth specific facts demonstrating there is a genuine issue for trial. *Id.* While the Court must resolve fact disputes and reasonable inferences in the light most favorable to the nonmoving party, this edict applies only to "inferences supported by admissible evidence, [and] not those supported by only speculation or conjecture." *Grant v. Trustees of Indiana Univ.*, 870 F.3d 562, 568 (7th Cir. 2017).

Summary judgment is, therefore, not a dress rehearsal or practice run; "it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007). In other words, summary judgment is the "time for a party to put its evidentiary cards on the table." *Washington,* 2021 WL 1962420, at *3. On both the facts and the law, the City of Waukegan has the winning hand.

## B. The City of Waukegan Enjoys Absolute Immunity from this Lawsuit

This entire lawsuit stems from the City of Waukegan's decision not to certify WPC's casino proposal to the Illinois Gaming Board. The City's decision is afforded absolute immunity.

The Tort Immunity Act serves to protect local public entities and public employees from liability arising from the operation of government. *Vill. of Bloomingdale v. CDG Enterprises, Inc.*, 752 N.E.2d 1090, 1095-96 (Ill. 2001) (citing 745 ILCS 10/1-101.1(a)); *Strauss v. City of Chicago*, 2021 IL App (1st) 191977, ¶61. "By providing immunity, the legislature sought to prevent the diversion of public funds from their intended purpose to the payment of damage claims." *CDG Enterprises, Inc.*, 752 N.E.2d at 1096. Consistent with this purpose, courts must follow the plain language of the Act, and must not read exceptions into the tort immunity provisions. *Id.* at 1098-99; *O'Malley v. Vill. of Palos Park*, 805 N.E.2d 308, 317 (Ill. App. Ct. 2004).

Sections §2-104 and §1-204 of the Tort Immunity Act preclude WPC's claims. Under §2-104, a municipality is not liable for any injury stemming from its failure to issue any certificate, approval or similar authorization:

> A local public entity is not liable for an injury caused by the issuance, denial, suspension or revocation of, or by the failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order or similar authorization where the entity or its employee is authorized by enactment to determine whether or not such authorization should be issued, denied, suspended or revoked.

745 ILCS 10/2-104. WPC claims injury from the City of Waukegan's failure to certify WPC's proposal to the Illinois Gaming Board. In short, WPC claims an injury from the City's failure or refusal to provide it with the necessary certification or authorization. The City of Waukegan's authority to deny this authorization comes from an enactment, section 10/7(e-5) of the Illinois Gambling Act. 230 ILCS 10/7(e-5). WPC's alleged injury falls within the plain language of the Tort Immunity Act.

WPC's alleged injury falls within the scope of the Tort Immunity Act. An injury under the Act includes an economic injury or the loss of economic opportunity. *CDG Enterprises, Inc.*, 752 N.E.2d at 1100 (holding municipality was immune from claim involving theft of an economic opportunity); *Strauss*, 2021 IL App (1st) 191977, ¶¶20, 68 (holding municipality was immune from plaintiff's various claims of economic harm). An injury under the Act also includes WPC's specific causes of action. The Tort Immunity Act specifically defines injury to include "any injury alleged in a civil action, *whether based upon the Constitution of the United States or* the Constitution of the State of Illinois, and *the statutes or common law of Illinois* or of the United States." 745 ILCS 10/1-204 (emphasis added). WPC's constitutional claim and its two statutory claims fall squarely within this definition.

WPC cannot sidestep this immunity by focusing on the City Council's process or by combining a series of disparate allegations relating to a theory of influence-peddling and corruption. The Illinois Supreme Court's decision in *CDG Enterprises* forecloses these exact arguments. In *CDG Enterprises,* the plaintiff corporation sought to frame its lawsuit as a challenge to the municipality's *process* for denying its zoning petition and not simply as a challenge to the denial itself. 752 N.E.2d at 1099. The plaintiff corporation also sought to frame the municipality's decision as one plagued by corruption, alleging, among other things, the municipality's consultant was acting against plaintiff's interests, the municipality had "secretly met with other individuals to create opposition to [plaintiff's] plan, the chairman of the municipality's planning commission had "pressure[ed] other members to vote against [plaintiff]," and that one of the relevant parcels had been bought by individuals "closely aligned with" municipal officials. *Id.* at 1094. The Illinois Supreme Court rejected these efforts because whether the municipality denied the zoning petition through "abuse of official process and power, through corrupt and malicious misuse of power, or for corrupt or malicious motives" was "wholly immaterial" to the plaintiff's claims. *Id.* These allegations were immaterial because §2-104 does not contain any "reference to intent" and "certainly does not contain an exception for 'willful and wanton misconduct' or 'corrupt or malicious motives.'" *Id.* The City of Waukegan is "immune from liability for any injury" WPC may have suffered from the City's decision not to certify its proposal and WPC's repeated references to former state senator Michael Bond (more than 130 alone in the proposed Second Amended Complaint) cannot change this. *See id.* at 1100.

**C.      Summary Judgment is Appropriate on the WPC's Equal Protection Claim Because WPC Cannot Bring Suit Under §1983 as an Arm of the Potawatomi Tribe**

WPC alleges the City of Waukegan violated the Equal Protection Clause because it treated the WPC differently than it treated the other casino license applicants, with no rational basis for the disparate treatment. Doc. 56 at ¶¶225-236; *see also* Doc. 86 at ¶¶131-145 (of the proposed Second Amended Complaint). WPC cannot bring this lawsuit because the casino entity is an arm of the Potawatomi Tribe and therefore a sovereign entity that cannot bring a §1983 lawsuit.

The Potawatomi Tribe is a federally-recognized Indian tribe that exercises "inherent sovereign authority over [its] members and territories." *Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, 498 U.S. 505, 509 (1991); *Thurmond v. Forest Cty. Potawatomi Cmty.*, No. 18-CV-1047-PP, 2020 WL 488864, at *3 (E.D. Wis. Jan. 30, 2020); *see also* SOF ¶62. This sovereign authority means Indian tribes enjoy the common-law immunity traditionally enjoyed by other sovereign powers. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978); *Thurmond,* 2020 WL 488864, at *3. Immunity from a §1983 lawsuit is within this broad grant of immunity because an "Indian tribe is not a 'person' subject to suit under §1983." *Thurmond,* 2020 WL 488864, at *3 (citing *Inyo Cty., Cal. v. Paiute-Shoshone Indians of the Bishop Cmty. of the Bishop Colony*, 538 U.S. 701, 709 (2003)).

This grant of sovereign immunity extends beyond the tribe itself, reaching "tribal enterprises, *including gaming.*" *Dotson v. Tunica Biloxi Gaming Comm'n*, No. 1:18-CV-00885, 2020 WL 1493028, at *2 (W.D. La. Feb. 27, 2020) (emphasis added); *see also Confederated Tribes of Warms Springs Rsrv. of Oregon v. Vanport Int'l, Inc.*, 428 F. Supp. 3d 384, 400 (D. Or. 2019) ("Tribal sovereign immunity applies to both commercial and governmental activities of the Tribe, including tribal corporations 'acting as an arm of the tribe.'"). When tribal immunity extends to a

"commercial entity acting as an 'arm of the tribe,' the court does not have jurisdiction over the suit." *Confederated Tribes,* 428 F. Supp. 3d at 400. Notably, this immunity applies even when the tribe's commercial activities take place off tribal lands. *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 785 (2014).

The sovereign immunity enjoyed by Indian tribes runs in both directions. Indian tribes may not be sued under §1983 (as noted above). But by the same token, an Indian tribe "may not sue under §1983. . ." *Chemehuevi Indian Tribe v. McMahon*, 934 F.3d 1076, 1082 (9th Cir. 2019). The Potawatomi Tribe agrees with this law: "Indian tribes do not qualify as a 'person' who may sue under §1983." *See Thurmond v. Forest County Potawatomi Community,* No. 2:18-CV-1047 (E.D. Wis.) (Defendants' Memorandum of Law in Support of Their Motion to Dismiss) (Doc. 26 at 7). Likewise, an arm of the tribe cannot bring a §1983 claim. *See Williams v. Big Picture Loans, LLC*, 929 F.3d 170, 176 (4th Cir. 2019) (citing *Inyo Cty.,* 538 U.S. at 704, 705 n.1). This was the position of the United States government in *Inyo County:* when a casino is properly viewed "as an arm of the Tribe," the casino corporation, "like the Tribe*, is not a 'person' that can sue* and be sued under Section 1983." Brief for the United States as Amicus Curiae Supporting Petitioners in Part and Respondents in Part, No. 02-281, 2003 WL 252549, at 14 (Jan. 23, 2003) (emphasis added).

The question now is whether WPC is "an arm of the [Potawatomi] Tribe" and therefore unable to bring a §1983 suit.[4] According to the proposed Restatement of the Law of American Indians, a commercial entity would be considered to "be an 'arm of the tribe'" for purposes of sovereign immunity if "the (1) the entity is controlled by the governing body of the tribe, (2) the

---

[4] The Seventh Circuit has not articulated a framework for determining whether an entity qualifies as arm of the Tribe. *See Holtz v. Oneida Airport Hotel Corp.*, 826 F. App'x 573, 574 (7th Cir. 2020) ("We have not yet had occasion to consider the application of the 'arm of the tribe' test . . .").

tribe owns the entity, and (3) a substantial portion of the net revenues earned by the entity inure to the tribe." Restatement of the Law of American Indians § 59 TD No 3 (2019). The federal courts have identified their own set of factors for this issue, and consider: (1) the method by which the commercial entity was created; (2) its purpose; (3) its structure, ownership, and management, including the amount of control the Tribe has over the entity; (4) whether the Tribe intended for the entity to have tribal sovereign immunity; (5) the financial relationship between the Tribe and the entity; and (6) whether the purposes of tribal sovereign immunity would be served by granting immunity. *See, e.g., Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1191 (10th Cir. 2010); *White v. Univ. of California*, 765 F.3d 1010, 1025 (9th Cir. 2014).

Applying these factors, courts have consistently found casinos to be extensions of the tribe. *See, e.g., Breakthrough Management,* 629 F.3d at 1195; *Nguyen v. Cache Creek Casino Resort*, No. 2:20-CV-1748 TLNK JNPS, 2021 WL 22434, at *3 (E.D. Cal. Jan. 4, 2021), *report and recommendation adopted*, 2021 WL 568212 (E.D. Cal. Feb. 16, 2021); *Ireson v. AVI Casino Enterprises, Inc.*, No. 2:17-CV-987 JCM VCF, 2017 WL 2960526, at *2 (D. Nev. July 10, 2017). Such is the case here. Applying the six *Breakthrough* factors reveals that the Potawatomi Tribe's footprint is found throughout this litigation and in the underlying actions that gave rise to this lawsuit.

### (1)    A Tribal Casino Formed Waukegan Potawatomi Casino

The Potawatomi Hotel & Casino responded to the City of Waukegan's RFQ/P – not the Plaintiff Waukegan Potawatomi Casino. SOF ¶63. The Potawatomi Hotel & Casino operates the casino in Milwaukee, which is a tribal casino established under the Indian Gaming Regulatory Act. SOF ¶64. The Potawatomi Hotel & Casino "is 100% minority owned" – in other words, it is

entirely owned by the Potawatomi Tribe.  SOF ¶66.  A gaming compact runs between the state of Wisconsin and the Potawatomi Tribe related to the Milwaukee Casino.  SOF ¶68.

The Potawatomi Hotel & Casino formed Waukegan Potawatomi Casino, LLC, on October 11, 2019, but only after the Potawatomi Tribe's Executive Council authorized its formation.  SOF ¶¶14, 70.  WPC is owned by the Potawatomi Tribe.  SOF ¶67.  Potawatomi Hotel & Casino planned to fully fund the construction and startup of WPC.  SOF ¶71.  ██████████████████

████████████████████████████████████████████████████████████████

████████████████████

The first factor favors immunity.  *See Breakthrough,* 629 F.3d at 1192 (noting the commercial entity was "a wholly owned . . . enterprise of the Tribe"); *see also Cadet v. Snoqualmie Casino*, 469 F. Supp. 3d 1011, 1015 (W.D. Wash. 2020) ("The casino is wholly owned and operated by the Tribe. . . .").

### (2)  Waukegan Potawatomi Casino Serves Tribal Goals

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████  These three goals were part of the "talking points" for tribal members.  SOF ¶75.  ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████████ The

second factor favors immunity. *See Breakthrough,* 629 F.2d at 1192 (noting the casino was created

for the financial benefit of the tribe); *Cadet,* 469 F. Supp.3d at 1016 (same).

> **(3)    The Potawatomi Tribe Controls the Decisions of Waukegan Potawatomi Casino**

WPC has never had any of its own employees and is owned by the Potawatomi Tribe. SOF

¶¶67, 74. The control and direction of WPC comes from the Tribe's Executive Council and

individuals affiliated with the Potawatomi Tribe or the tribal casino in Milwaukee. WPC's board

of directors were appointed by the Potawatomi Tribe. SOF ¶81. The manager of WPC is Rodney

Ferguson, who serves as the CEO for the Tribe's Milwaukee Casino. SOF ¶80. Ferguson, along

with Kevin Hanson and Jeffrey Crawford, served as the corporate representatives for the

deposition of Plaintiff WPC. SOF ¶77. Hanson is the Potawatomi Tribe's Chief Financial Officer

and Crawford is the Potawatomi Tribe's attorney general. SOF ¶¶78-79. In other words,

employees of the Potawatomi Tribe or the tribal casino were the individuals testifying on

Plaintiff's behalf and the individuals with the power to bind WPC. *See* Fed. R. Civ. P. 30(b)(6).

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████ To

this day, WPC has no assets, no employees, and no business operations or functions; it is a shell

entity that is part and parcel of the Potawatomi Tribe. SOF ¶¶67, 74, 82.

All of this control is evident in the filing of this lawsuit. ████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████ In short, WPC and the Potawatomi

Tribe are one and the same. Indeed, the proposed Second Amended Complaint has even used the short-hand "Potawatomi" to refer to both WPC and the Potawatomi Tribe. Doc. 86 at ¶15. The third factor favors immunity. *See Howard v. Plain Green, LLC*, No. 2:17-CV-302, 2017 WL 3669565, at *4 (E.D. Va. Aug. 7, 2017) (noting the entity's managing members were appointed by the Tribe), *report and recommendation adopted,* 2017 WL 3669096 (E.D. Va. Aug. 24, 2017).

### (4) The Potawatomi Tribe Has Used Sovereign Immunity to Its Advantage

In July 2018, Derrick Thurmond sued the Potawatomi Tribe and several employees of the Milwaukee Casino, alleging the defendants discriminated against him based on his race and verbal tic. *Thurmond*, 2020 WL 488864, at *1. As a defense to these allegations, the Potawatomi Tribe and the Milwaukee Casino employees argued that they were entitled to sovereign immunity, noting that tribal sovereign immunity extends "beyond the reservation and to tribal commercial activities." *Thurmond v. Forest County Potawatomi Community,* No. 2:18-CV-1047 (E.D. Wis.) (Defendants' Memorandum of Law in Support of Their Motion to Dismiss) (Doc. 26 at 8-10). The Potawatomi Tribe intends for its commercial entities to enjoy sovereign immunity. *See id.* The fourth factor favors immunity.

### (5) Waukegan Potawatomi Casino is Financially Intertwined with the Potawatomi Tribe

In 2019, Waukegan Potawatomi Casino did not have an established bank account. SOF ¶82. The money to pay for WPC's engagement of consultants and attorneys came from a trust account funded by the Potawatomi Tribe. SOF ¶82. In other words, the money to pay for WPC's bills came directly from the Potawatomi Tribe. SOF ¶¶82-83. WPC has not paid any of its own expenses. SOF ¶83. This is logical since WPC is owned by the Potawatomi Tribe. SOF ¶67. ■

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████ – a benefit not enjoyed by the other casino

applicants.  The fifth factor favors immunity.  *See McCoy v. Salish Kootenai Coll., Inc.*, 334 F.

Supp. 3d 1116, 1123 (D. Mont. 2018), *aff'd,* 785 F. App'x 414 (9th Cir. 2019) (noting how the

entity and the tribe were financially interconnected); *Howard*, 2017 WL 3669565, at *4 (E.D. Va.

Aug. 7, 2017) (noting how the tribe has owned the entity since its inception).

### (6)     Tribal Sovereign Immunity Is Served by Dismissing a §1983 Claim

Tribal sovereign immunity is a well-enshrined principal in the law.  *See Santa Clara Pueblo

v. Martinez*, 436 U.S. 49, 58 (1978).  And one of the ways that Congress has promoted tribal

sovereignty is through economic development – and particularly the "authorization of Indian

gaming."  *Breakthrough,* 629 F.3d at 1183.  A consistent approach in this area of law – applying

immunity principles in a neutral manner to §1983 lawsuits brought by and against an arm of a tribe

– serves a compelling interest and fosters a uniform application of the law.  Dismissing WPC's

§1983 claim serves the purpose of tribal sovereign immunity because WPC would be entitled to –

and would certainly have sought (as in the *Thurmond* case) – immunity had it been on the receiving

end of a §1983 claim.  The sixth factor favors immunity.

The six *Breakthrough* factors establish that Waukegan Potawatomi Casino was an arm of

the Potawatomi Tribe and that it cannot sue or be sued under §1983.

**D. Summary Judgment is Appropriate on Waukegan Potawatomi Casino's Equal Protection Claim Because Waukegan Potawatomi Casino Cannot Prove It Was Similarly Situated or that the City of Waukegan Acted Irrationally**

WPC alleges the City of Waukegan violated the Equal Protection Clause because it treated the WPC differently than it treated the other casino license applicants, with no rational basis for the disparate treatment. Doc. 56 at ¶¶225-236; *see also* Doc. 86 at ¶¶131-145. This claim fails for a number of different reasons, putting aside the City's absolute immunity.

The Fourteenth Amendment's Equal Protection Clause permits a plaintiff who is not a member of a protected class to bring a claim under the "'class-of-one' theory." *145 Fisk, LLC v. Nicklas*, 986 F.3d 759, 771 (7th Cir. 2021), *cert. denied*, No. 20-1576 (June 7, 2021). To state a claim under this theory, WPC must prove: (1) the City of Waukegan intentionally treated it differently from others similarly situated; and (2) the City of Waukegan had no rational basis for the difference in treatment. *Id.; Fares Pawn, LLC v. Indiana Dep't of Fin. Institutions*, 755 F.3d 839, 845 (7th Cir. 2014) (citing *Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000)). WPC bears the burden of showing it was treated differently and without a rational reason. *Fares Pawn,* 755 F.3d at 845. WPC cannot satisfy either of the two elements necessary to prove its claim.

**1. The Casino Applicants Were Not Similarly Situated As A Matter of Law and Fact**

The question of whether individuals are similarly situated is ordinarily a factual question reserved for the jury. *Fares Pawn,* 755 F.3d at 845. However, "summary judgment is appropriate where it is clear that no reasonable jury could find that the similarly situated requirement has been met." *Id.* (granting summary judgment). Such is the case here.

The casino license application process cannot support a class-of-one claim. *See Caesars Massachusetts Mgmt. Co., LLC v. Crosby*, 778 F.3d 327, 336 (1st Cir. 2015) (Souter, J.). In *Crosby,* the U.S. Court of Appeals for the First Circuit asked whether "the law

construing §1983 recognizes a claim for wrongful treatment of a casino license applicant or its associate as a class-of-one plaintiff, within the principle of *Village of Willowbrook v. Olech.* . .." *Id.* The answer was that it did not. "[N]o class-of-one cause of action can be recognized against state actors given the remarkable breadth of discretion provided by the Massachusetts casino licensing statute." *Id.* The reason for this holding is straight-forward: it is all but impossible to compare one casino license applicant to another for Equal Protection purposes. *See id.* The "possibility of mandating or deriving a baseline against which to assess a claim of 'treating seemingly similarly situated individuals differently,' is in fact even further from possibility in casino licensing than in public hiring." *Id.* This was so, even though *Crosby,* like this case, featured allegations of political machinations, favoritism and bias. *Id.* at 331. WPC cannot show it was similarly situated as matter of law. *See id.* at 337 (affirming the dismissal of plaintiff's equal protection counts).

WPC cannot show it was similarly situated as a matter of fact. The City of Waukegan heard from four applicants: (1) North Point; (2) Rivers; (3) Full House; and (4) WPC. SOF ¶8. Each of these four applicants presented starkly different visions for a casino in Waukegan – from the architectural design, to available amenities, to the casino's square footage and number of gaming positions. SOF ¶¶23, 29-32, 36-40. ███████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███ 30, 32. WPC's footprint also differed dramatically from those of the other applicants. ███

████████████████████████████████████████████████████

████████████████████████████████████████████████████

39.

Each of the applicants proposed vastly different terms for the Fountain Square property. Rivers offered to purchase the Fountain Square site for $11 million or to offer a long-term lease. SOF ¶25. Full House offered to enter into a 99-year lease and also proposed an option to purchase the Fountain Square site for $30 million. SOF ¶25. North Point offered $22 million for the Fountain Square site spread over thirteen years. SOF ¶25. In noted contrast, WPC's initial proposal for the Fountain Square property ranged from $4.8 million to $6.4 million – well below its competitors' proposals. SOF ¶¶26-28. Even its revised offer of $12 million fell fall short of the proposals by Full House and North Point. SOF ¶¶25, 43.

There were important differences with the operator's themselves. North Point's operator runs six casino properties in four states. SOF ¶9. Full House is a publicly traded company, which runs five casinos in four states. SOF ¶10. Rivers is owned by Churchill Downs, a publicly traded company with a market capitalization exceeding $7.3 billion, and Rush Street Gaming, which operates four casinos in three states, including a casino in neighboring Des Plaines, Illinois. SOF ¶11. In noted contrast, the Potawatomi Tribe's gaming experience is limited to two tribal casinos in a single state. SOF ¶¶13, 15.

These differences demonstrate the other casino applicants were not "identical or directly comparable to the plaintiff in all material respects." *Dolly's Cafe LLC v. Illinois Gaming Bd.*, No. 19-CV-1666, 2019 WL 6683046, at *3 (N.D. Ill. Dec. 6, 2019). WPC cannot establish that it was similarly situated to the other casino license applicants as a matter of fact. *See Fares Pawn,* 755 F.3d at 847 (affirming summary judgment on equal protection claim).

### 2.  The City of Waukegan Acted Rationally

The second element of the class-of-one theory is the "more demanding" one, and asks whether there exists "a *conceivable* rational basis for the difference in treatment. . ." *145 Fisk,*

*LLC,* 986 F.3d at 771; *Dolly's Cafe LLC*, 2019 WL 6683046, at *3.  Any reasonably conceivable state of facts that *could* provide a rational basis to explain the difference in treatment will suffice. *145 Fisk, LLC,* 986 F.3d at 771.  This rational basis just needs to be conceivable – it does not need to be the actual reason for the defendant's action.  *FKFJ, Inc. v. Vill. of Worth*, 466 F. Supp. 3d 853, 868 (N.D. Ill. 2020), *affirmed,* 2021 WL 3782732 (7th Cir. Aug. 26, 2021); *Dolly's Cafe LLC*, 2019 WL 6683046, at *3.  Allegations of animus will come into play only if the Court cannot hypothesize a rational basis for the action.  *145 Fisk, LLC*, 986 F.3d at 771.  After all, a given action "can have a rational basis and be a perfectly logical action for a government entity to take even if there are facts casting it as one taken out of animosity."  *Fares Pawn, LLC,* 755 F.3d at 845.

There were several conceivable, rational bases for the City of Waukegan's decision not to certify WPC's proposal.  *See Dolly's Cafe LLC*, 2019 WL 6683046, at *4 (noting that a single rationale will suffice).  The City of Waukegan could have decided WPC's proposed 130,000 square-foot casino, with 1,890 gaming positions was simply too large for the market.  █████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

████████████████████████████████ 42; *see also* SOF ¶34 (noting the median household income levels for the City of Waukegan were below the state and national averages).  The City of Waukegan could have decided that it wanted its casino to include a hotel, entertainment venue, or temporary casino – ████████████████████████████████████████ SOF ¶32.  These differences mattered to members of the City Council.  Alderman Bolton voted not to certify WPC's proposal because she was looking for proposals that would include entertainment and other amenities.  SOF ¶49.  The City of Waukegan could have decided that it wanted to maximize the

amount of money that it received for the Fountain Square property, making WPC's offer of +/-15% of the appraised value the least attractive of the proposals.

The City of Waukegan had other conceivable, rational bases for declining to certify WPC's proposal. The City of Waukegan could have decided the Potawatomi Tribe lacked the necessary experience to run a commercial casino in Illinois, its previous experience limited to tribal casinos in Wisconsin. SOF ¶¶13, 15. The City of Waukegan could have decided the Potawatomi Tribe were not fully committed to a casino in Waukegan because they feared taking opportunities and revenue from their flagship Milwaukee casino. SOF ¶¶90-92. The proximity of the Waukegan and Milwaukee casinos, about 50 miles, and the fact that ████████████████████████ ████████████████████████████████████████ made this concern about internal competition all the more realistic. *See* SOF ¶¶69, 93. At least one City Council member found WPC's presentation underwhelming, indicative of the Potawatomi Tribe's true interest in the Waukegan property. *See* SOF ¶50 (noting the approach had been to just "hurry up and get it done."). WPC cannot establish the City of Waukegan lacked any rational basis for its actions. *See Dolly's Cafe LLC*, 2019 WL 6683046, at *4 (dismissing plaintiff's equal protection claim against the Illinois Gaming Board).

E.    **Summary Judgment is Appropriate on Waukegan Potawatomi Casino's Gambling Act Claim Because Waukegan Potawatomi Casino Cannot Establish Its Ability to Invoke the Statute**

WPC alleges the City of Waukegan violated the Illinois Gambling Act because the City did not engage in a good faith negotiation with WPC. Doc. 56 at ¶¶244-248; *see also* Doc. 86 at ¶¶151-154. This claim fails for a number of different reasons, putting aside the City's absolute immunity.

### 1.    There is No Private Right of Action Under the Gambling Act

WPC alleges there is an implied right of action under §7(e-5) of the Gambling Act, but does not cite any specific language from the statute from which to imply this right.  Doc. 56 at ¶252; *see also* Doc. 86 at ¶163.  This omission is telling.

Section 7(e-5) of the Gambling Act authorized the Illinois Gaming Board to issue a casino license to the City of Waukegan, along with a few other cities and townships.  230 ILCS 10/7(e-5)(3).  Section 7(e-5) is, therefore, enabling legislation.  *See id.*  And courts examining regulatory or enabling legislation "have found that such legislation does not imply a private right of action." *Alarm Detection Sys., Inc. v. Orland Fire Prot. Dist.*, 194 F. Supp. 3d 706, 714 (N.D. Ill. 2016), *aff'd,* 929 F.3d 865 (7th Cir. 2019) (collecting cases).  *Alarm Detection Systems* and its supporting case law demonstrates that §7 of the Gambling Act is not the "type of legislation that usually provides for a private right of action under Illinois law." *Id.*

This conclusion is buttressed by the four-factor test used to determine whether a statute provides for an implied right of action.  Under this test, courts will imply a cause of action when: "(1) the plaintiff is a member of the class for whose benefit the statute was enacted; (2) the plaintiff's injury is one the statute was designed to prevent; (3) a private right of action is consistent with the underlying purpose of the statute; and (4) implying a private right of action is necessary to provide an adequate remedy for violation of the statute." *Patel v. Zillow, Inc*., No. 17-CV-4008, 2017 WL 3620812, at *6 (N.D. Ill. Aug. 23, 2017), *aff'd*, 915 F.3d 446 (7th Cir. 2019).  Courts must use "caution in implying a private right of action," because the act of doing so is an exercise of policy-making authority that is more appropriately exercised by the legislature.  *Id.*

WPC cannot satisfy this four-factor test.  The Illinois Gambling Act was enacted "to benefit the people of the State of Illinois" by assisting economic development, promoting Illinois tourism,

and increasing the amount of revenue available to the state. 230 ILCS 10/2. The Illinois Gaming Board is empowered to select among competing license applicants according to which applicant will "best serve the interests of the citizens of Illinois." 230 ILCS 10/5(c)(1). WPC is a shell organization, devoid of any employees, that is owned by the Potawatomi Tribe. SOF ¶¶67, 74; *see Alarm Detection Sys.,* 194 F. Supp. 3d at 714 ("There is no indication in the statute's language that it is designed to provide a remedy for injury to commercial interests like those Alarm Detection raises here."). To be sure, the statute speaks of situations where a party is aggrieved by "action of the [Illinois Gaming Board]." 230 ILCS §10/5(b). But WPC did not suffer any adverse action before the Gaming Board – its complaint is directed toward the City of Waukegan's own certification process. Plaintiff is not a member of the class for whose benefit the statute was enacted. The first factor favors the City of Waukegan.

Plaintiff's purported injuries – that it was not selected for certification and the City of Waukegan did not negotiate in good faith – are not the type of injuries the statute was designed to prevent. Instead, the statute is intended to award the City of Waukegan a casino license and to ensure that *applicants* have negotiated *with the City* in good faith (and not the other way around). 230 ILCS 10/7(e-5)(3). The Gambling Act seeks to protect certain injuries before the Gaming Board, but, as noted above, WPC did not suffer any injury before the Gaming Board. Implying a private right of action for a shell corporation is not consistent with the underlying purpose of the statute – namely, awarding casino licenses. The second and third factors favor the City of Waukegan.

Implying a private right of action for a shell corporation is not necessary to provide an adequate remedy for a violation of the statute; the statute already provides the Illinois Gambling Board with the ultimate authority for issuing a casino license and the corresponding authority to

ensure that the local governments have followed the proper guidelines. 230 ILCS 10/7(a),(b),(e-5). The Gambling Act is effective without the need for an implied private right of action. *See Patel,* 2017 WL 3620812, at *6 ("[T]he Illinois Supreme Court . . . implies a private right of action under a statute only in cases where the statute would be ineffective, as a practical matter, unless such action were implied."). The fourth factor favors the City of Waukegan.

WPC cannot meet any of the four factors necessary to show the Illinois Gambling Act provides for a private right of action. *See Alarm Detection Sys., Inc. v. Orland Fire Prot. Dist.*, 929 F.3d 865, 871 (7th Cir. 2019) ("ADS [] is not a member of the protected class (public residents), its competition-related injury is not one the District Act is geared to protect against (fire-related damage or harm), and making a competition claim out of the District Act would not be consistent with its purpose (fire safety).").

### 2. Waukegan Potawatomi Casino Has Not Exhausted Its Administrative Remedies

WPC seeks to have this Court find that the City violated its obligations under the Illinois Gambling Act. Doc. 56 at ¶¶246-255 and Wherefore Clause; *see also* Doc. 86 at ¶¶153-160 and Prayer For Relief. This claim should have first been brought to the Illinois Gaming Board (assuming the statute provides a private right of action and the City of Waukegan is not immune from suit).

Parties aggrieved by the action of an administrative agency cannot ordinarily seek review in the courts until they have pursued all of the available administrative remedies. *Castaneda v. Illinois Hum. Rts. Comm'n*, 547 N.E.2d 437, 439 (Ill. 1989); *Emerald Casino, Inc. v. Illinois Gaming Bd.*, 852 N.E.2d 512, 514-15 (Ill. App. Ct. 2006). There are many reasons for insisting on this exhaustion requirement. *Castaneda,* 547 N.E.2d at 439. Requiring exhaustion allows the administrative agency to develop a full record and consider all the relevant facts; it allows the

agency to utilize its expertise; and it allows the aggrieved party the chance to ultimately succeed before the agency, making judicial review unnecessary. *Id.; see also Gonzalez v. O'Connell*, 355 F.3d 1010, 1017 (7th Cir. 2004) (referring to these same objectives). Concerns about exhaustion apply with particular force when proceeding before the agency would allow the agency to apply its special expertise. *Gonzalez*, 355 F.3d at 1017.

Such is the case here. The Gambling Act provides the Illinois Gaming Board with extensive authority, granting the Board all powers "necessary and proper to fully and effectively execute this Act. . ." 230 ILCS §10/5(a)(1). Among its enumerated powers, the Gaming Board has the authority to conduct "all hearings pertaining to *civil violations of this Act* or rules and regulations promulgated hereunder." 230 ILCS §10/5(b)(2) (emphasis added). WPC's complaint that the City of Waukegan violated a provision of the Gambling Act should have been presented to the Gaming Board. Had it done so, the Gaming Board could have developed important facts relevant to this lawsuit, provided its expertise on any open questions or interpretations of the Gambling Act, and possibly mooted some (or all) of the relief currently being sought before this Court. *See Castaneda,* 547 N.E.2d at 439. WPC failed to exhaust important administrative remedies.

To be sure, WPC is upset with a decision by the City of Waukegan and not a state agency. But the term "'administrative agency' is defined to include not only administrative agencies of the State of Illinois but also political subdivisions of the state and municipalities that have the power to make administrative decisions." *Peeples v. Vill. of Johnsburg*, 932 N.E.2d 612, 617 (Ill. App. Ct. 2010) (citing 735 ILCS 5/3-101). When a local government acts in an administrative or quasi-judicial manner, "by determining facts pursuant to a hearing or ruling on the rights of a small

number of people, its actions may be appropriately reviewed using the procedures and principles of administrative review." *Id.*

WPC has asserted a federal constitutional claim, among its state-law claims. This fact is of no moment. WPC's constitutional claim is premised on an alleged violation of the Gambling Act. Doc. 56 at ¶228 ("The conduct complained of occurred under . . . the Illinois Gambling Act."); *see also* Doc. 86 at ¶134 ("The conduct complained of occurred under the Illinois Gambling Act."). So while the "ultimate challenge is constitutional, the premise of [the] constitutional argument is statutory." *Gonzalez,* 355 F.3d at 1017. And a litigant may not avoid the exhaustion requirements by framing its challenge as a constitutional one. *Id.* WPC was required to exhaust its administrative remedies before filing this lawsuit. *Id.* at 1018 ("[W]e hold that a petitioner with a statutory argument that has a reasonable prospect of affording him relief may not skip the administrative process and go straight to federal court by simply reconstituting his claim as constitutional and claiming futility.").

F.  **Summary Judgment is Appropriate on Waukegan Potawatomi Casino's Open Meetings Act Claim Because the City Council Complied with the Appropriate Municipal Law**

WPC alleges the City of Waukegan violated the Illinois Open Meetings Act when it (1) failed to allow public comment at the October 17, 2019 special City Council meeting; (ii) failed to post an agenda for the October 21, 2019 City Council meeting that would have informed the public of WPC's motion for reconsideration; and (iii) subsequently voted on WPC's motion to reconsider. Doc. 56 at ¶¶257-262; *see also* Doc. 86 at 44, ¶(c). WPC seeks a declaration the City Council's actions on October 17, 2019 and October 21, 2019 are void. Doc. 56 at ¶35, ¶(c); *see also* Doc. 86 at 44, ¶¶(d-e). These claims present purely legal issues and fail on their merits, putting aside the City's absolute immunity.

1. **The October 17, 2019 Vote to Certify Certain Casino Applicants Complied with the Open Meetings Act**

WPC alleges the City violated the Open Meetings Act when it proceeded to vote on the casino proposals without permitting public comment or "audience time" at the October 17, 2019 special meeting. *See* Doc. 86 at ¶¶167-175 (citing 5 ILCS 120/2.06(g) and the City's Code of Ordinances). WPC misreads the relevant municipal law.

"Nothing in open meetings laws give members of [the] public the right to be anything more than spectators at public meetings." E. McQuillin, Law of Municipal Corporations §13:16 (3d ed. 2020). The Illinois Open Meetings Act is no different. Section 2.06 provides the public the "opportunity to address public officials," but only to the extent provided by the "rules established and recorded by the public body." 120 ILCS 120/2.06(g). WPC argues the Code of Ordinances provides for "audience time." Doc. 86 at ¶168. The requirement for "audience time" may be true of regular city council meetings, but the October 17, 2019 City Council Meeting was not a regular city council meeting – it was a special meeting. *See* Code of Ordinances of Waukegan, Illinois §2.36 (Time, place of regular city council meetings and standing committee meetings), §2.37 (Special meetings), §2.62 (Order of business), available at https://library.municode.com/il/waukegan/codes/code_of_ordinances?nodeId=COOR_CH2AD_ARTIICICO_DIV1GE_S2-37SPME

Regular city council meetings take place on the first and third Monday of each month at 7:00 p.m. Code of Ordinances of Waukegan, Illinois §2.36. Special meetings, meanwhile, "may be held at any time. . . ." Code of Ordinances of Waukegan, Illinois §2.37. The October 17, 2019 City Council meeting occurred on a Thursday (and not a Monday). Mayor Cunningham introduced

the meeting as the "Thursday, October 17, 2019 Special City Council Meeting."  SOF ¶45.[5] WPC's proposed Second Amended Complaint also describes the October 17, 2019 meeting as a "special City Council meeting."  Doc. 86 at ¶¶171-172; *see also Monticello Sch. Dist. No. 25 v. George L. on Behalf of Brock L.*, 102 F.3d 895, 903 (7th Cir. 1996) (noting plaintiff is "bound by the allegations set forth in [its] complaint.").

Section 2.37 of the Code of Ordinances governs Special Meetings.  Under §2.37, at every special meeting, "the call for the assembly shall be read and afterwards filed by the clerk, *and no business other than that set forth in the call and in such notice shall be acted upon at such meeting*."  Code of Ordinances of Waukegan, Illinois §2.37 (Special meetings) (emphasis added). Section 2.37 does not contain any reference to "audience time."  *Id.*

More to the point, the City of Waukegan had already provided substantial "audience time" for the public.  The October 17, 2019 special meeting was a continuation of the public hearing that started on September 18.  SOF ¶44.  The City of Waukegan heard from the public, both during and after the September 18, 2019 public hearing.  SOF ¶19.  Approximately 500 people attended the September 18, 2019 public hearing, during which the City heard from 44 people and reviewed 17 written comments.  SOF ¶20.  The City of Waukegan held the public comment period open for another seventeen days, during which it received another 1,249 written or emailed comments.  SOF ¶21.  The City of Waukegan received a final set of comments from 26 people during the October 7, 2019 City Council Meeting.  SOF ¶22.  The City of Waukegan followed its established rules for audience time.  The October 17, 2019 Special City Council Meeting did not violate the Open Meetings Act.

---

[5] This Court may take judicial notice of these city council videos.  *See City of Inglewood v. Teixeira*, No. 15-CV-1815 MWF, 2015 WL 5025839, at *2-3 (C.D. Cal. Aug. 20, 2015).

### 2. The October 21, 2019 Vote on the Motion to Reconsider Complied with the Open Meetings Act

WPC alleges the Open Meetings Act requires the public be given advance notice of, and the right to attend, all meetings concerning public business. Doc. 56 at ¶258; *see also* Doc. 86 at ¶176 (citing 5 ILCS 120/1). According to the WPC, the motion to reconsider was not added to the agenda for the October 21, 2019 City Council meeting and, worse yet, the City Council voted on the motion to reconsider without giving notice to the public. Doc. 56 at ¶¶261-262; *see also* Doc. 86 at ¶¶177-180. Illinois law forecloses these allegations.

The Open Meetings Act provides that Illinois citizens "be given advance notice of and the right to attend all meetings at which any business of a public body is discussed or acted upon in any way." 5 ILCS 120/1. Section 2.02 of the Open Meetings Act speaks to the public notice, and requires an agenda for each regular meeting be posted at the public body's principal office and meeting location at least 48 hours before the meeting. 5 ILCS 120/2.02(a). At the same time, the "requirement of a regular meeting agenda shall not preclude the consideration of items not specifically set forth in the agenda." *Id.* The 48-hour requirement is also not without its exceptions. "If a notice or agenda is not continuously available for the full 48-hour period due to actions outside of the control of the public body, then that lack of availability does not invalidate any meeting or action taken at a meeting." 5 ILCS 120/2.02(c).

Such was the case here. The City Council voted on the various casino proposals during the evening of October 17, 2019, a Thursday. SOF ¶¶45, 47, 48. On Friday, October 18, 2019, the WPC's representatives requested that a motion for reconsideration be put on the agenda for the City Council's meeting of Monday, October 21, 2019. SOF ¶54. In other words, WPC sought to have the motion to reconsider placed on the agenda on the very next business day. The forty-eight hours leading up to the Monday meeting were not business days.

There was no Open Meetings Act violation because "actions outside of [Waukegan's] control" prevented the City Council from posting an agenda for the full forty-eight-hour period – namely, WPC's own frantic, last-minute request. 5 ILCS 120/2.02(c). It is the height of irony for WPC to complain that an agenda was not available for forty-eight hours when it was the one who created the urgency by seeking to have a motion for reconsideration taken up on the next business day. In any event, WPC cannot claim any harm from the lack of notice because it was obviously aware of the meeting and attended it. *See Miller v. Phelan*, 845 F. Supp. 1201, 1209 (N.D. Ill. 1993) ("[D]efendants point out that '[s]ince Plaintiff Miller was aware of the meeting and attended with his necessary credentials . . . the alleged failure to publish a public notice and agenda of the appointment meeting clearly had no adverse effect [sic] upon him. . .' We agree.").

Putting the WPC's conduct aside, nothing compelled the City Council to place the motion for reconsideration on the agenda before considering it. Under the plain language of the Open Meetings Act, the "requirement of a regular meeting agenda *shall not preclude the consideration of items not specifically set forth in the agenda*." 5 ILCS 120/2.02(a) (emphasis added). More to the point, motions for reconsideration are often decided during the same session as the vote to be reconsidered. Under the City of Waukegan's Rules of Order and Procedure, a motion for reconsideration must be made either "at the same meeting, or the next succeeding meeting." Code of Ordinances of Waukegan, Illinois §2.74 Reconsideration of motions. WPC's position is therefore incompatible with the strict timing requirements for reconsideration motions.

Finally, it is worth noting that WPC filed this lawsuit *before* the motion to reconsider was even before the City Council. The City Council holds its regular meeting on the first and third Mondays of the month at 7:00 p.m. *See* Code of Ordinances of Waukegan, Illinois §2.36 Time, place of regular city council meetings and standing committee meetings. This lawsuit, meanwhile,

was on file by 3:30 p.m. on October 21, 2019. SOF ¶58. The original complaint specifically sought to undo the City Council's October 17, 2019 resolutions. Doc. 1-1 at 22 (Wherefore Clause at ¶¶1-2). WPC's complaints with respect to the October 21, 2019 vote are insincere and unsupported by Illinois law.

### 3. Waukegan Potawatomi Casino's Proposed Remedy is Too Extreme, Even Assuming a Violation of the Open Meetings Act

WPC seeks a declaration that the City Council's actions on October 17, 2019 and October 21, 2019 are void. Doc. 56 at 35, ¶(c); *see also* Doc. 86 at 44, ¶¶(d-e). The City of Waukegan has not violated the Open Meetings Act (as explained above). Even assuming a violation, WPC's proposed remedy is against Illinois law.

Voiding the City Council's actions on October 17, 2019 and October 21, 2019 is a remedy that is both "too extreme and not supported by the Open Meetings Act." *Chicago Sch. Reform Bd. of Trustees v. Martin*, 309 Ill. App. 3d 924, 936 (1st Dist. 1999). The Open Meetings Act permits a Court to grant appropriate relief, including "'declaring null and void any final action taken at a *closed* meeting in violation of this Act.'" *Id.* (quoting 5 ILCS 120/3(c)). But the "null and void" language is limited to a "closed session." *Id.; Williamson v. Doyle*, 112 Ill. App. 3d 293, 300 (1st Dist. 1983). The October 17 and October 21 sessions were open sessions, with members of the public in attendance. Each of the sessions was publicly recorded and the public in attendance can be seen throughout the video recordings. SOF ¶¶46, 61. There is no statutory basis for voiding the City Council's decisions. *See Bd. of Educ. of Waukegan Cmty. Unit Sch. Dist. 60 v. Illinois State Charter Sch. Comm'n*, 2018 IL App (1st) 162084, ¶125 ("[Even] assuming . . . the Commission committed the alleged violations of the Act, we find that, based on the language of the Act, District 60's requested relief – declaring the Commission's decision to grant LEARN's appeal null and void – is improper.").

### G. Summary Judgment is Appropriate on Waukegan Potawatomi Casino's Claim for Punitive Damages

WPC's complaint includes a demand for punitive damages. Doc. 56 at 32, ¶(d); *see also* Doc. 86 (Wherefore Clause at ¶g). WPC cannot recover punitive damages on any of its three claims (even assuming their viability).

Punitive damages are not available in §1983 lawsuits brought against municipalities. *Patterson v. Mclean Cty. Sheriff's Dep't*, No. 1:20-CV-01073, 2021 WL 2403436, at *12 (C.D. Ill. June 11, 2021). The same is true for WPC's state-law claims. "[A] local public entity is not liable to pay punitive or exemplary damages in any action brought directly or indirectly against it by the injured party or a third party." 745 ILCS 10/2-102. The City of Waukegan is entitled to summary judgment on WPC's claim for punitive damages.

## V.    CONCLUSION

The federal courts are not to be used as zoning and licensing boards of appeal. *See CEnergy–Glenmore Wind Farm # 1, LLC v. Town of Glenmore*, 769 F.3d 485, 487 (7th Cir.2014) (collecting cases). But that is just what Waukegan Potawatomi Casino seeks to do here – to invoke the federal court's jurisdiction as a means of appealing the City of Waukegan's licensing decisions. This is improper and this Court should grant the City of Waukegan's motion for summary judgment on all counts.

Dated: September 21, 2021

Respectfully submitted,

CITY OF WAUKEGAN

/s/ *Glenn E. Davis*
One of the Attorneys for Defendant


Glenn E. Davis
Charles N. Insler
HEPLERBROOM LLC
211 North Broadway, Suite 2700
St. Louis, MO 63102
(314) 241-6160
(314) 241-6116 - Facsimile
glenn.davis@heplerbroom.com
charles.insler@heplerbroom.com

*Counsel for City of Waukegan*

## CERTIFICATE OF SERVICE

The undersigned, an attorney of record, states that he caused to have electronically filed with the Clerk of the Court, the foregoing pleading, and caused the same to be served on all attorneys of record via CM/ECF on September 21, 2021 via the Court's electronic filing system.

*/s/ Glenn E. Davis*